# ROBERTSON *v.* FRANK BROTHERS COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 15.  Argued October 17, 1889. — Decided October 28, 1889.

The payment of money to a customs official to avoid an onerous penalty, though the imposition of that penalty may have been illegal, is sufficient to make the payment an involuntary one.

The compulsory insertion by an importer of additional charges upon the entry and invoice, which necessarily involve the payment of increased duties, makes the payment of those duties involuntary.

The general rule that the valuation of merchandise made by a customs appraiser is conclusive if no appeal be taken therefrom to merchant appraisers, is subject to the qualification that if the appraiser proceed upon a wrong principle, contrary to law, and this be made to appear, his appraisement may be impeached.

A statute which requires the dutiable value of imported goods to be reached by adding to the market value of the goods the cost of transportation, and other defined charges, does not authorize an appraiser to reach the

amount of such cost and charges by an estimate or percentage ; and an importer who pays duties on an importation thus calculated may, in an action brought to recover such as were illegally exacted, show wherein such estimate or percentage was illegal and excessive.

THIS was an action to recover duties alleged to have been illegally exacted. Verdict for the plaintiff, and judgment on the verdict. The defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Solicitor General* for plaintiff in error.

*Mr. Henry E. Tremain* for defendant in error. *Mr. Mason W. Tyler* and *Mr. W. B. Coughtry* were with him on the brief.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action to recover for an alleged overcharge of duties on imports. The goods imported were bananas brought from Aspinwall. The duty was ten per cent *ad valorem*. The plaintiffs offered evidence tending to show the market value of the bananas at the port of shipment, which was claimed to be only fifty cents apiece for the large bunches and twenty-five cents apiece for the small bunches. The invoices received with the cargo exhibited this as the true market value, and added certain charges for labor and consul fees. The appraisers required the plaintiffs to add fifty per cent of these amounts as transportation charges for bringing the bananas into Aspinwall, and also certain shipping charges and commissions. The plaintiffs protested against this as an unjust addition ; but whenever it was omitted, the charge was added by the appraiser and a penalty of twenty per cent of the whole duty was imposed and exacted ; and the officers declared that this would be done whenever the addition should be omitted. To avoid this penalty, and to get immediate possession of their goods, (which are of a perishable nature,) the plaintiffs made the addition required, and paid the increased duties that resulted, — but always under protest as before stated.

The form of the entries and invoices with the additions was as follows, the additions being in italics:

*Entry :*

"Merchandise imported by Frank Brothers Company in the steamship Alsa, whereof Seymour is master, from Aspinwall to New York, Feb. 23, 1882.   Marks, F. B."

" Two bins of bananas, containing 4132 large bunches, at sixty cents," " pesos, 2479.20," " 3463 small bunches at thirty cents," " 1038.90 pesos."

" Charges, two hundred and thirty-nine pesos."

" *Shipping charges added as required by the appraiser to make five cents Colombian currency per bunch, 140.38 pesos.*"

" *Transportation charges added as required by appraiser on* 4132 *large bunches at 25 cents, $1033, and 3463 small bunches at* 12½ *cents, $432.87.*"

*Invoice :*

"Invoice of merchandise shipped by the Frank Bros. Co. on board the Alsa, Sansome master, bound for New York, and consigned to Frank Bros. Co.; Colon, Feb. 11, 1882, 2 bins containing —

| | | |
|---|---|---|
| " 4202 bunches bananas at 60 | 2521.20 | pesos. |
| " 3564 bunches bananas at 30 | 1069.20 | " |
| " Charges for labor | 239.37 | " |
| " Consul fee | 3. | " |
| | 3832.77 | " |

" The Frank Bros. Company :

| | | |
|---|---|---|
| " 4132 large bunches at 60 | 2479.20 | " |
| " 3463 small bunches at 30 | 1038.90 | " |
| " Charges | 239.37 | " |
| " *Shipping charges added as required by the appraiser to make* 5 *cents Colombia currency per bunch* | 140.38 | " |
| | 3897.85 | " |

"Reduced to U. S. currency . . . . . . $3207.93
" *Transportation charges added as required by the*
    *appraiser on* 4132 *large bunches at* 25 *cents*  1033.
" 3463 *small bunches at* 12½ *cents* . . . . .    432.87

                                                    4673.80
" Commission 2½ per cent. . . . . . . .             116.84

                                                    4790.64"

The appraiser's return indorsed thereon was as follows: "Value correct, with importer's additions."

It was contended by the counsel for the government at the trial, and is contended here, that the payment of the duties complained of was a voluntary payment, inasmuch as the plaintiffs themselves made the additions to the entries and invoices, and that, therefore, they cannot recover back any part of the money so paid; and they requested the court below to instruct the jury to render a verdict for the defendant. This the court refused to do; and left it to the jury to decide, upon the evidence, whether the making of the additions was a voluntary act on the part of the plaintiffs, or done under constraint in view of the penalty sure to be imposed in case it was not done.

On this point the judge, in his charge to the jury, speaking of the entry and the additions made by the plaintiffs or their agent, said:

"He says he put them on there because he was compelled to. If that is so he ought not to be estopped from recovering, and here is a question for you on that subject, and you will decide it in this way. If those statements and figures were put on there because he thought that was the best way, on the whole; if, exercising his own judgment freely, he thought that it was the best way to get along with this to put it on there and let it go, he can't take it back, . . . he can't recover anything back. The verdict will have to be for the defendant anyway, if that is so, because it was his own act in putting it on there. The collector assessed the duty just as he made it, and he can't complain. But . . . if

he was required to do it, or given to understand by some officer in the collector's department that it would be the worse for him, seriously, if he didn't; as, for instance, if the appraiser told him if he didn't put those on there the collector's office would, that the appraiser would, and that he would be exposed to a penalty that would be assessed against him; if he was given to understand by the collector's department, or some officer of it, that if he didn't put these figures on there they should, and make it the worse for him because he didn't, and he would thereby be exposed to a penalty of a larger duty which he would have to pay for not doing it, and he was in that way, for the sake of saving himself from the penalty which they would put upon him beyond what would otherwise be chargeable, induced to put them on, then he is not bound by it. . . . If you find he did not do it freely, then you can look further, and see if there was anything put on there that ought not to be. If he was compelled to do it, it ought not to go on, and if he was, the plaintiffs are entitled to recover. And if you decide he is bound by putting that on, that will end the case; you must give a verdict for the defendant. If not, you may look and see if he was compelled to pay more than he ought; if he was compelled to pay transportation charges more than he ought to; and, if so, find a verdict for the right amount. If they were compelled to pay labor charges more than they ought to pay, find the verdict for the plaintiffs for the right amount of that. If they didn't pay any more than they ought to, transportation or labor charges, then the verdict is for the defendant."

Under this charge, of course, the jury in finding for the plaintiffs must have found that they acted under constraint, under moral duress, in making the additions for transportation and labor. We do not see how the verdict can be set aside for error in the charge on this point, unless the law be that virtual or moral duress is insufficient to prevent a payment made under its influence from being voluntary.

This point was discussed in *Maxwell* v. *Griswold*, 10 How. 242, 256, and in *Swift Co.* v. *United States*, 111 U. S. 22, 28. In *Maxwell* v. *Griswold*, an appraisement was erroneously

made as to the point of time of the valuation, and the importer paid the consequent excess of duties. The government contended that this was voluntary. But this court said:

" This addition and consequent payment of the higher duties were so far from voluntary in him that he accompanied them with remonstrances against being thus coerced to do the act in order to escape a greater evil, and accompanied the payment with a protest against the legality of the course pursued towards him.

" Now, it can hardly be meant in this class of cases that to make a payment involuntary it should be by actual violence or any physical duress. It suffices if the payment is caused on the one part by an illegal demand and made on the other part reluctantly and in consequence of that illegality, and without being able to regain possession of his property except by submitting to the payment.

" All these requisites existed here. We have already decided that the demand for such an increased appraisal was illegal. The appraisement itself as made was illegal. The raising of the invoice was thus caused by these illegalities in order to escape a greater burden in the penalty. The payment of the increased duties thus caused was wrongfully imposed on the importer, and was submitted to merely as a choice of evils.

" He was unwilling to pay either the excess of duty or the penalty, and must be considered, therefore, as forced into one or the other by the collector *colore officii* through the invalid and illegal course pursued in having the appraisal made of the value of the wrong period. . . .

" The money was thus obtained by a moral duress not justified by law, and which was not submitted to by the importer except to regain possession of his property already withheld from him on grounds manifestly wrong. Indeed, it seems sufficient to sustain the action whether under the act of February 26, 1845, [Rev. Stat. § 3011,] or under principles of the common law, if the duties exacted were not legal, and were demanded and were paid under protest."

In that case, it is true, the fact that the importer was not

able to get possession of his goods without making the payment complained of, was referred to by the court as an important circumstance; but it was not stated to be an indispensable circumstance. The ultimate fact, of which that was an ingredient in the particular case, was the moral duress not justified by law. When such duress is exerted under circumstances sufficient to influence the apprehensions and conduct of a prudent business man, payment of money wrongfully induced thereby ought not to be regarded as voluntary. But the circumstances of the case are always to be taken into consideration. When the duress has been exerted by one clothed with official authority, or exercising a public employment, less evidence of compulsion or pressure is required, — as where an officer exacts illegal fees, or a common carrier excessive charges. But the principle is applicable in all cases according to the nature and exigency of each. In *Swift Co.* v. *United States*, 111 U. S. 22, the plaintiffs, who were manufacturers of matches, and furnished their own dies for the stamps used by them, and were thereby entitled to a commission of ten per cent on the price of such stamps, accepted for a long period their commissions in stamps, (which, of course, were worth to them only ninety cents to the dollar,) and they did this because the Treasury Department would pay in no other manner. We held that the apprehension of being stopped in their business by non-compliance with the Treasury regulation was a sufficient moral duress to make their payments involuntary. Mr. Justice Matthews, delivering the opinion of the court, said : " The question is whether the receipts, agreements, accounts and settlements made in pursuance of that demand of necessity were voluntary in such sense as to preclude the appellant from subsequently insisting on its statutory right. We cannot hesitate to answer that question in the negative. The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction, or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid, or rather value parted with under such pressure, has never been regarded as a voluntary act within the mean-

ing of the maxim *volenti non fit injuria.*" The cases referred to by Justice Matthews abundantly support the position taken, and need not be repeated here. In our judgment the payment of money to an official, as in the present case, to avoid an onerous penalty, though the imposition of that penalty might have been illegal, was sufficient to make the payment an involuntary one. It is true that the thing done under compulsion in this case was the insertion of the additional charges upon the entries and invoices; but that necessarily involved the payment of the increased duties caused thereby, and in effect amounts to the same thing as an involuntary payment.

But it is contended that the act of the appraiser in making, or requiring to be made, the additional charges for transportation and labor was final and conclusive, and cannot be made the subject of inquiry. It is undoubtedly the general rule that the valuation of merchandise made by the appraiser, unappealed from to merchant appraisers, is conclusive. But whilst this is the general rule, it is subject to the qualification that if the appraiser proceed upon a wrong principle, contrary to law, and this be made to appear, his appraisement is not unimpeachable. This qualification applies to the acts of many other officials charged with duties of a similar character, such as assessors of the value of property for taxation, commissioners for appraising lands taken for improvements, or damages sustained by owners of land and the like. What is complained of in the present case is, that the plaintiffs were required to add to the market value of the goods at the places from which they were exported transportation charges and expenses for labor which were never incurred. If that complaint is well founded, such additions cannot be maintained; for whilst the appraisers are not limited to the actual cost of articles exported, but may place upon them their market value at the places from which they were imported, and their estimate of that market value is conclusive, they could not, whilst the law required the addition to that market value of additional charges of transportation, &c., exercise any discretion as to those charges — but were confined to the actual cost thereof when

such cost could be shown. It was "cost," not "value," which was required in that part of the estimate of *dutiable* values. The sections of the Revised Statutes which regulated this matter in 1881 and 1882, when the transactions involved in the present suit took place, were §§ 2906 and 2907, the latter of which was repealed by the act of March 3d, 1883. 22 Stat. 523.

Section 2906, which is still in force, declares that "when an *ad valorem* rate of duty is imposed on any imported merchandise, or when the duty imposed shall be regulated by, or directed to be estimated or based upon, the value of the square yard, or of any specified quantity or parcel of such merchandise, the collector within whose district the same shall be imported or entered shall cause the actual market value; or *wholesale* price thereof, at the period of the exportation to the United States, in the principal markets of the country from which the same has been imported, to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed."

Section 2907 declared that, "in determining the *dutiable* value of merchandise, there shall be *added to* the cost, or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country from whence the same has been imported into the United States, the cost of transportation, shipment and transhipment, with all the expenses included, from the place of growth, production or manufacture, whether by land or water, to the vessel in which shipment is made to the United States; the value of the sack, box, or covering of any kind in which such merchandise is contained; commission at the usual rates, but in no case less than two and a half percentum ; and brokerage, export duty, and *all other actual or usual charges* for putting up, *preparing and packing* for transportation or shipment.    All charges of a general character incurred in the purchase of a general invoice shall be distributed *pro rata* among all parts of such invoice; and every part thereof charged with duties, based on value, shall be advanced according to its proportion, and all wines or other articles paying specific duty by grades

shall be graded and pay duty according to the actual value so determined."

Now, whilst under the first of these sections (2906) the estimate of the market value of the goods, made by the appraiser, is in general unimpeachable, it is plain that the items to be added to that value under § 2907 did not depend upon estimation, but upon the actual truth of the case, namely, the *cost* of transportation, shipment, &c., to the vessel in which shipment is made. This cost may be something; it may be nothing. In the present case the appraiser required fifty per cent of the market value of the goods to be added as cost of transportation. The plaintiffs disputed this item. Evidence was gone into on the subject, and the matter was left fairly to the jury. The only question for us to determine is, whether the matter was open to evidence, and could lawfully be left to the consideration of the jury; or whether the determination of the appraiser on this subject was conclusive. We think with the court below that this was a question open for examination. In *Obertcuffer* v. *Robertson*, 116 U. S. 499, we decided that since the act of 1883, repealing § 2907 of the Revised Statutes, it is not lawful for the appraiser to add to the market price of the goods the cost or value of the cartons or boxes in which they are packed, either by themselves, or as part of the market value. In the principle involved that case is similar to the present. If since the repeal of § 2907 the appraiser cannot lawfully add the cost of packing boxes to the appraised value to the goods, before such repeal he could not lawfully add more than that cost; and if he did, it was a matter for examination and correction. To the same effect is the case of *Badger* v. *Cusimano*, 130 U. S. 39, where the collector caused an appraisement to be made in which a portion of the charges for packing and transportation of the goods imported was deducted from that category and added to the invoice value of the goods themselves. We held that, in the absence of fraud on the part of the importer, this could not lawfully be done, and that such an appraisement is not lawful or conclusive.

We are satisfied, not only on the authority of these cases,

but from the reason of the thing and the proper application of the principles of the law, that the course pursued in the court below was free from error.

These are all the questions which it is deemed important to discuss, and the result is that

*The judgment must be affirmed ; and it is so ordered.*