787 P.2d 830

**WESTERN BANK OF SANTA FE,**
Plaintiff–Appellee,

v.

**William E. BIAVA,**
Defendant–Appellant.

No. 18388.

Supreme Court of New Mexico.

Feb. 23, 1990.

Marchiondo, Vigil & Voegler, Douglas G. Voegler, Albuquerque, for defendant-appellant.

Sommer, Udall & Hardwick, Jack N. Hardwick, Santa Fe, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

In *Clark Leasing Corp. v. White Sands Forest Products, Inc.*, 87 N.M. 451, 535 P.2d 1077 (1975), this Court held that the defense of accord and satisfaction could not be asserted by a debtor, in a suit by the creditor to collect an undisputed and liquidated amount, where the debtor claimed that the creditor/secured party had agreed to accept possession of the collateral in full satisfaction of the amount claimed. Raising a similar defense in the present case, the debtor (Biava) resisted the secured party's (the bank's) suit on a promissory note secured by the debtor's limited partnership interest, which the debtor alleged the bank had agreed to accept in full satisfaction of the amount for which suit was brought. Relying on *Clark*, the bank successfully moved for summary judgment. We hold that the trial court misapplied *Clark* and reverse the summary judgment.

## I.

In January 1984 Biava executed a promissory note to the bank in the principal sum of $66,005.24 and secured it with an assignment of Biava's 6.7 percent interest in a limited partnership known as the Santa Fe Court House and Spa. The assignment had as its express purpose the granting to the bank of a security interest in the limited partnership interest, and the parties executed and filed for record a financing statement covering the collateral.

Biava defaulted in payment of the note and negotiated with Mr. Ortiz, a bank officer, concerning Biava's payment of his indebtedness. According to Biava's affidavit,

> on or about February 13, 1985, I entered into an agreement whereby Western Bank agreed to accept my 6.7% ownership in the Santa Fe Courthouse and Spa as full payment and satisfaction of the promissory note which I had executed.

While he was "waiting for the paperwork" (again, according to his affidavit), the instant litigation was commenced. Western Bank sued for judgment on the note, for foreclosure of its security interest, and for attorney's fees. Biava's answer admitted all material allegations of the complaint (including execution of note, default and amount due) and set up the affirmative defense of the alleged agreement "as full payment and satisfaction" of the note.

On this state of the pleadings the bank moved for summary judgment, arguing that "for purposes of this motion, the alleged agreement will be assumed to exist, because * * * the alleged agreement (even if it existed) is not a fact which would suffice * * * as a legal defense to" the bank's claim. The district court granted the motion, and Biava appeals.

## II.

In *Clark*, the Court recognized that an "accord"—i.e., an executory agreement to settle a claim (*Restatement (Second) of Contracts* § 281 (1979))—operates as a defense to the claim even though there has not yet been "satisfaction"—i.e., the agreement has not yet been performed—in two situations. The first of these is when the claim is unliquidated. The second occurs when, if the claim is liquidated, there is "new and independent consideration" to support the creditor's agreement that the claim will be released. *See Clark*, 87 N.M. at 453, 535 P.2d at 1079; *Yates v. Ferguson*, 81 N.M. 613, 615, 471 P.2d 183, 185 (1970) (receipt of additional security operates as accord and satisfaction if parties intend settlement agreement). The debt in this case was undisputed and liquidated; hence the question is whether Biava's agreement to assign his 6.7 percent partnership interest constituted "new and independent consideration."

The debtor in *Clark* asserted that the creditor had been allowed to repossess the collateral with the understanding that this would be in full settlement of the outstanding indebtedness. The debtor maintained that (1) its agreement to allow the repossession constituted sufficient consideration for the alleged accord, and (2) its relinquishment of the right to a surplus on resale of the collateral furnished additional consideration. This Court responded that (1) allowing repossession was simply an agreement by the debtor to do what it was already obligated to do—surrender possession on default, and (2) there was no evidence that the agreement included the debtor's relinquishment of its right to any surplus. 87 N.M. at 453, 535 P.2d at 1079. As the Court said, an agreement to do what one is already legally bound to do is not sufficient consideration for the promise of another. *Id.* (quoting *Barnes v. Reliable Tractor Co.*, 117 Ga.App. 777, 778, 161 S.E.2d 918, 919 (1968)). On the evidentiary point, the Court noted that "there was not a shred of evidence of an accord [i.e., the agreement]," the issue having been raised for the first time on appeal. 87 N.M. at 452, 535 P.2d at 1078.

The case at bar is quite different. First, although Biava was similarly obligated to surrender "possession" of the collateral (the partnership interest) on default, this was not at all the same as a transfer of ownership. "Possession" of the collateral would have entitled the bank to sell it and

otherwise proceed as provided in the Uniform Commercial Code—Secured Transactions, NMSA 1978, Subsections 55–9–504(1) and (3) (Repl.Pamp.1987). Ownership of the collateral, on the other hand, would entitle the bank to exercise all of the rights of a limited partner under the partnership agreement and the Uniform Limited Partnership Act, NMSA 1978, Sections 54–2–1 to –63 (Repl.Pamp.1988). And, whereas there was no evidence in *Clark* of an agreement on the part of the debtor to relinquish its right to a surplus, in this case Biava swore in his affidavit:

> The value of my interest in the [partnership] could well have exceeded my indebtedness to [the bank] which would have entitled me to payment of the excess. However, I was willing to forego this, if [the bank] would accept my interest as full payment of the note.

The general rule on consideration in this context is, of course, that

> [a]ny new consideration, though insignificant or technical merely, is generally regarded as sufficient consideration to support a contract of accord and satisfaction. The courts do not inquire into and do not concern themselves with the adequacy of the consideration; anything which may be deemed in the judgment of the law a legal benefit to the creditor, or a legal detriment to the debtor, however slight, is sufficient.

1 Am.Jur.2d *Accord and Satisfaction* § 13 (1962).

As early as 1926 this Court noted the trend in cases of liquidated, undisputed debts to seize upon the "slightest" fresh consideration in order to uphold an accord and satisfaction. *Buel v. Kansas City Life Ins. Co.*, 32 N.M. 34, 41, 250 P. 635, 638 (1926) (citing 1 R.C.L. *Accord and Satisfaction*, § 15 (1914)). *Clark* itself stands for the proposition that new consideration will support the existence of an accord and satisfaction in the case of an undisputed, liquidated debt when there is in fact such consideration.

To sum up on this point, the bank's position on this appeal is based on a misreading of *Clark*, a misreading which may have led the trial court into error. The bank states, relying on *Clark:* "If the existing claim is liquidated or undisputed payment of less than the full amount of the claim will not be sufficient consideration to support the accord." And: "Since Western Bank's claim is liquidated and undisputed any agreement to pay less than the full amount owed cannot be an accord because it is not supported by consideration." As we have seen, *Clark* does not stand for these propositions—propositions which, while they may be accurate in the abstract, do not apply in this case because the agreement Biava asserted was not simply to pay less than the full amount owed; it rather was to transfer his ownership of a partnership interest and forego the rights he would otherwise have had under the Uniform Commercial Code as a debtor in default.

### III.

■ While placing primary reliance on *Clark*, the bank also seeks to uphold the summary judgment as a matter of procedure. It argues that when it moved for summary judgment and adduced Biava's answer admitting liability on the note, it made a *prima facie* showing of entitlement to summary judgment and shifted the burden to Biava to establish at least a reasonable doubt as to the existence of a genuine issue of material fact. *See Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986). The bank is correct as to the initial procedural posture before the court once the motion was filed and the answer was considered. At that point, since accord and satisfaction is an affirmative defense, *Transamerica Ins. Co. v. Sydow*, 107 N.M. 104, 105, 753 P.2d 350, 351 (1988), the burden rested on Biava to come forward with sufficient evidentiary matters to establish a genuine issue of fact as to his defense. *Fidelity Nat'l Bank v. Goff, Inc.*, 92 N.M. 106, 108, 583 P.2d 470, 472 (1978).

■ In ruling on the motion the trial court had before it, in addition to the pleadings, Biava's affidavit and a deposition he had given at the behest of the bank. The bank belittles the recitations in the affidavit, to the effect that there was "an agree-

ment" for the transfer of the partnership interest in exchange for a complete release, citing *Galvan v. City of Albuquerque*, 85 N.M. 42, 44–45, 508 P.2d 1339, 1341–42 (Ct.App.1973) (conclusory opinion regarding speed of vehicle in accident not considered because tests performed not identified and explained), and *Portales Nat'l Bank v. Bellin*, 98 N.M. 113, 117, 645 P.2d 986, 990 (Ct.App.1982) (conclusions stated in affidavits against summary judgment, unsupported by fact, are not sufficient to raise issue of material fact). We see no reason to cast doubt on these rulings emanating from our court of appeals. The justifiably cautious approach a court must bring to the treatment of "conclusory" testimony of an expert witness should not be engrafted onto an appraisal of an assertion by a lay person that he and another party made "an agreement." We simply note that factual assertions which could be characterized as conclusory can defeat a summary judgment motion if a material issue of fact remains.

■ We think that Biava's recitation in his affidavit, coupled with his testimony on deposition, was sufficient to raise a genuine issue of fact as to the existence of an agreement whereunder Biava would transfer to the bank ownership of his partnership interest in exchange for a complete release of his liability under the note. The bank argues that there was no showing of an offer and acceptance leading to formation of the agreement and that Biava did not identify the individual who allegedly entered into the agreement on the bank's behalf. Legalistic formulations of offer and acceptance are not necessary to establish an agreement sufficient to defeat a motion for summary judgment; the sworn statement of a layman that he "entered into an agreement" whereby the bank would accept ownership of his partnership interest as full payment and satisfaction of the promissory note should be—and we hold is—sufficient. In ruling on motions for summary judgment, a trial court should apply a common-sense interpretation of the language used by the affiant or deponent to determine whether the requirements of SCRA 1986, 1–056(E) (party must adduce "such facts as would be admissible in evidence" in moving for and resisting summary judgment) have been satisfied.

Moreover, the recitation in the affidavit did not stand alone. In his deposition Biava testified that he discussed another contemplated transaction with Mr. Ortiz and that

Mr. Ortiz told me that he couldn't handle anything like that [the other transaction] until we got the other situation [the delinquent promissory note] straightened out, that he would be glad to take it to his board once the other thing was done, that if I would pass title to the units to them that he would be happy to carry that to the board for me * * *. He said it would save passing title on the units, the partnership units would save me and my family embarrassment.

\* \* \* \* \* \*

Q You're talking about passing title to the property. Did Mr. Ortiz say if you pass title to this limited partnership interest, this amount of debt that was then owing, which was about $75,000.00—
A Right.
Q $75,347.00 in December would be forgiven?
A Oh, that was the understanding, yes.

We think these sworn statements were sufficient to satisfy Biava's burden to come forward with evidentiary facts sufficient to defeat the motion for summary judgment on the accord-and-satisfaction defense. We have no doubt that almost all trial courts would receive in evidence the testimony of the debtor that he and the bank had made an agreement along the lines testified to by Biava and leave for cross-examination questions of who on behalf of the bank made this agreement, when and where it was made, exactly who said what, and the other circumstances surrounding the making of the alleged agreement. It would then be for the trier of facts to evaluate the testimony and decide whether or not the agreement really was made. It is for this reason that trial is the preferred method for resolving this kind of dispute, *Pharmaseal Laboratories, Inc. v. Goffe*, 90

N.M. 753, 759, 568 P.2d 589 (1977), although the utility of the summary-judgment procedure in weeding out those cases in which a genuine fact issue is not present cannot be denied. *Goodman v. Brock*, 83 N.M. 789, 793, 498 P.2d 676, 680 (1972).

The summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

WILSON, J., concurs.

RANSOM, J., specially concurs.

RANSOM, Justice (specially concurring).

I specially concur to address whether the claimed accord was supported by consideration in the form of a promise by the debtor to relinquish contract and UCC (Article 9) rights to any surplus value in the security. On the issue addressed by the majority, distinguishing the surrender of possession (e.g., *Clark*) from surrender of title as in the accord claimed here, I find the distinction illusory without addressing whether, in either event, there was a promise to relinquish rights to any surplus value or to forego claim to other rights under the contract or Article 9.

I recognize that the majority addresses the issue of surplus value in its discussion of Biava's affidavit. However, the majority analysis also contains the suggestion that transfer of "ownership" in itself necessarily entails waiver of all legal and equitable rights in the collateral. I am not convinced that, unless so contemplated by the parties, transfer of title alone operates to do anything more than transfer of possession, i.e., to facilitate exercise of the creditor's preexisting right to obtain payment of the debt from the collateral upon default by the debtor. *Cf.* NMSA 1978, § 55-9-202 (Repl.Pamp.1987) (provisions of Article 9 with regard to rights, obligations, and remedies apply whether title is in the secured party or the debtor).

In *Clark*, when the debtor relinquished possession of the equipment, there was held to be no new consideration to support an accord absent evidence that the debtor agreed to relinquish contract and Article 9 rights to any surplus after resale. Although Biava claims such a relinquishment, the crux of the bank's argument on appeal is that Biava's response to the motion for summary judgment failed to set forth facts showing that the value of the collateral was greater than or equal to the indebtedness. That is, the bank argues Biava has not shown that relinquishment of rights to any surplus had a peppercorn of value. It does not appear, however, that the bank raised this issue below, and it is not incumbent on the respondent to show facts in support of any material element of his case not relied upon by movant as warranting summary disposition. *See Fidelity National Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 583 P.2d 470 (1978) (moving party carries the burden to show no genuine issue of material fact as to affirmative defenses in the pleadings of party responding to motion for summary judgment).

To shift to Biava the burden to demonstrate the existence of surplus value, it was incumbent upon the bank to make a *prima facie* showing that there existed no genuine issue of material fact as to whether the promise of relinquishment was contemplated by the parties to constitute consideration of value at the time the accord was struck. Proof of value in that which is agreed to be forfeit is not necessary to establish a promise to forbear as consideration for an accord. In general, all that is required is a promise to forbear, made by one party and accepted by the other. *Gonzales v. Gauna*, 28 N.M. 55, 206 P. 511 (1922). *See also Mel Dar Corp. v. Commissioner of Internal Revenue*, 309 F.2d 525 (9th Cir.1962) (forbearance based on belief in existence of value is consideration even though value ultimately might not be upheld). Only if the parties contemplated the promise to be valueless would it fail to constitute consideration upon acceptance.