2003-NMCA-128

80 P.3d 98

In the Matter of NORWEST BANK OF NEW MEXICO, N.A., succeeded in interest by Wells Fargo Bank New Mexico, N.A., Acting as Trustee for Various Trusts.

Laree Perez Losey, Petitioner–Appellee,

v.

Norwest Bank of New Mexico, N.A., succeeded in interest by Wells Fargo Bank New Mexico, N.A., in its corporate capacity and acting in its capacity as Trustee of the Jerry B. Losey Revocable Trust, as Amended in its Entirety dated October 3, 1995, Respondent–Appellee,

Jill Losey Edelman and Jamie Losey, Objectors–Appellants.

No. 22,697.

Court of Appeals of New Mexico.

Sept. 10, 2003.

Certiorari Denied, No. 28,297, Nov. 3, 2003.

Jerry Wertheim, John Wentworth, Carol A. Clifford, John V. Wertheim, Jones, Snead, Wertheim, Wentworth & Jaramillo, P.A., Santa Fe, NM, for Petitioner–Appellee.

W. Spencer Reid, Thomas C. Bird, Kurt Wihl, Meghan R. Dimond, Keleher & McLeod, P.A., Albuquerque, NM, for Respondent–Appellee.

Dennis E. Jontz, Ross L. Crown, Thomas P. Gulley, Jontz, Dawe, Gulley & Crown, P.C., Albuquerque, NM, for Objectors–Appellants.

## OPINION

CASTILLO, Judge.

{1} This appeal presents us with questions regarding approval of a mediated settlement of a derivative action brought by one beneficiary against a trust with four beneficiaries. The mediated settlement provides for distribution of all settlement proceeds to the one plaintiff beneficiary. Based on the particular facts of this case, we affirm the trial court's approval of the settlement.

## I. BACKGROUND

{2} We begin by identifying the parties to this case. Laree Perez Losey (Perez Losey), is the widow of Jerry B. Losey (Losey), who died in a plane crash in June 1996. Perez Losey is the stepmother of Losey's three adult children: Jill Losey Edelman, Jamie Losey, and Gary Losey. At the time of his death, certain of Losey's assets were held in the Jerry B. Losey Revocable Trust (Trust) with Norwest Bank of New Mexico, N.A., now Wells Fargo Bank New Mexico, N.A., (Bank), named as trustee. The Trust beneficiaries are Perez Losey and the three children. After the death of Losey, Perez Losey and the three children litigated the allocation of the assets of his estate, including those held by the Trust. On October 23, 1997, the parties reached a "Settlement Agreement and Release" (settlement agreement and release), which provided for the resolution of issues and claims among the parties, including Perez Losey's claims to the assets of the Trust. At the same time, Perez Losey and the three children entered into an "Agreement on Future Claims" (future claims agreement) concerning claims they might have against certain parties, including the Bank, regarding the sale of Losey's business assets. The future claims agreement stated that if agreed upon by all four parties, they would pursue the enforcement of the claims, in which case expenses and recovery would be divided 25% to Perez Losey and 75% to the three children. The settlement agreement and release and the future claims agreement are referred to together as the 1997 agreements.

{3} Almost two years later, in September 1999, Perez Losey brought a breach of fiduciary duty action in the form of a derivative suit against the Bank, as trustee, for financial losses to herself and the other Trust beneficiaries, who are the three children. The basis of the claim was the allegation that the Bank had sold the primary asset of the Trust, Zuni Rental, Inc., for less money than it was worth and without proper consideration for the interests of the Trust's beneficiaries. The action was brought pursuant to the Uniform Probate Code (Code), which governs trust proceedings. *See* NMSA 1978, § 45–7–201 (1975). Perez Losey did not request any relief for the Trust. In its May 3, 2000, motion to dismiss, the Bank challenged Perez Losey's capacity to represent the three children in a derivative action. Perez Losey agreed that her prayer for relief should be amended to reflect that she was seeking compensation only for her losses, not for the losses of the Children, resulting from the Bank's alleged breach of fiduciary duty. The trial court entered an order on June 12, 2000, amending by interlineation the prayer for relief to reflect this stipulation.

{4} Perez Losey, however, continued to claim the action was a derivative action brought on behalf of the Trust and for the

benefit of its beneficiaries. The Bank persisted in opposing the derivative claims and requested they be stricken from the final pretrial order. After a hearing held June 1, 2001, the trial court ultimately decided that "from the very beginning what had to be implicit in this action is a derivative action by [Perez Losey]." The trial court issued an order to that effect on June 12, 2001. In the same order, the trial court concluded that the three children were not indispensable parties to the suit. Finally, the order specifically reserved, until the end of trial, any determination regarding the extent to which the three children "shall be entitled, if at all, to the rights and benefits from any award against [the Bank] in this action."

{5} Trial on the merits began on June 11, 2001. After ten days of trial, Perez Losey and the Bank entered into two days of mediation, after which they reached a settlement agreement (mediated settlement). The mediated settlement called for the Bank to pay Perez Losey an amount of money in full settlement of all claims that were made or could have been made in the lawsuit. Perez Losey filed a motion seeking the trial court's approval of the mediated settlement. She argued that under trust law, where one beneficiary of a trust "consents to an act of the trustee that is in breach of trust, such beneficiary is precluded by consent from holding the trustee liable for a loss resulting from the breach of trust, but the other beneficiaries can hold the trustee liable." Perez Losey alleged that the Children had consented to the Bank's sale of Zuni Rental, which sale formed the basis of Perez Losey's contention that the Bank had breached its fiduciary duty. Therefore, Perez Losey maintained the Children were not entitled to any proceeds from the mediated settlement.

{6} In response to Perez Losey's motion for approval of the mediated settlement, the three children filed a motion in opposition. They argued that the mediated settlement was reached without their participation in the mediation and that it ignored any interest they might have in the claim. They requested that the trial court disapprove the settlement or, in the alternative, that the trial court award them 75% of the settlement amount, according to the terms of their earlier agreement on future claims. The trial court conducted a two-day hearing on the matter on August 13 and 14, 2001, followed by entry of findings and conclusions. Concluding that the motion in opposition was a formal request for intervention, the trial court denied the request as untimely. The trial court found that Perez Losey had expended a good deal of money on prosecuting the claim; that she and the trial court had given the three children a number of opportunities to join the lawsuit; that the three children have no right to the settlement amount; and that they are bound by the mediated settlement. The trial court entered a decree approving the mediated settlement shortly thereafter.

{7} Only two Trust beneficiaries, Jill and Jamie (Children), appeal the trial court's approval of the mediated settlement. Gary, a third beneficiary, joined in the objection to the mediated settlement below but is not a party to this appeal. The Children advance four arguments on appeal: (1) that they were entitled to object to the mediated settlement under Rule 1–023.1 NMRA 2003, governing derivative actions by shareholders, and were not required to intervene under Rule 1–024 NMRA 2003, relating to intervention; (2) that Perez Losey, after having brought a derivative claim, should not be permitted to reach the mediated settlement solely on her own behalf; (3) that given the earlier contracts between Perez Losey and the Children, the Children were entitled to 75% of the mediated settlement award; and (4) that the Bank violated its fiduciary duty to the Children when it reached the mediated settlement with Perez Losey. We address these arguments in turn.

## II. DISCUSSION

{8} The parties do not dispute on appeal that Perez Losey's suit was derivative. At oral argument, the Bank, which had vigorously contested the derivative nature of the suit, informed us that at the time the case was settled, the trial court had ruled that the suit was derivative, and the parties mediated and settled the case on that basis. New Mexico law is silent on whether a beneficiary

of a testamentary trust may bring a derivative action. Accordingly, we assume, without deciding, that such a derivative action is permissible.

### A. Rule 1–023.1: "Derivative Actions by Shareholders" and Rule 1–024: "Intervention"

{9} The trial court concluded that the Children's objection to the mediated settlement was a motion to intervene under Rule 1–024, which the trial court denied as untimely. The core of the Children's argument is that they are entitled to object to the mediated settlement under Rule 1–023.1 and that Rule 1–024 does not apply to this action. The Children, in essence, ask us to determine which of the two rules the trial court should have applied.

{10} Perez Losey contends that this argument was not preserved, since the Children failed to provide the trial court with legal authority for the argument. Perez Losey misreads our holding in *Martinez v. New Mexico State Engineer Office*, 2000–NMCA–074, ¶ 46, 129 N.M. 413, 9 P.3d 657. Providing the trial court with citation to authority is not a requirement for preservation. *See id.* An issue is preserved if the appellant "fairly invoked a ruling of the trial court on same grounds argued on appeal." *Id.* The Children preserved the issue in their submitted findings of fact and conclusions of law. *See Gonzales v. Lopez*, 2002–NMCA–086, ¶ 16, 132 N.M. 558, 52 P.3d 418 (holding that a party's submission of findings to the trial court was sufficient for preservation); *Tedford v. Gregory*, 1998–NMCA–067, ¶ 45, 125 N.M. 206, 959 P.2d 540 (same). Consequently, we will address the Children's argument, consider each rule in turn, and defer to the trial court on factual findings but review questions of law de novo. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996); *Fate v. Owens*, 2001–NMCA–040, ¶¶ 13–14, 130 N.M. 503, 27 P.3d 990.

#### 1. Rule 1–023.1

{11} Rule 1–023.1 provides that a derivative action "shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." The Children argue that Rule 1–023.1 should apply. They contend that because the trial court and the parties viewed Perez Losey's claim to be derivative, Rule 1–023.1, which governs analogous shareholder derivative actions, should govern in the present case. Consequently, they argue, they did not have to intervene to protect their interest because shareholders impacted by a shareholder derivative suit do not have to intervene; they simply appear in court when they are given notice of impending dismissal or settlement.

{12} Perez Losey counters that the "black letter law is that Rule 1–023.1 does not and should not apply to trust proceedings" because its relatively difficult procedural requirements are inconsistent with the ease with which the Code permits any interested person to initiate a trust proceeding. *See* NMSA 1978, § 45–1–304 (1975) (providing that the Rules of Civil Procedure govern trust proceedings unless inconsistent with the Code); NMSA 1978, § 45–7–206 (1975) (stating procedure to file a petition). In support of her argument, Perez Losey directs us to *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1462–63 (9th Cir.1995) (holding that trust beneficiaries of a pension plan need not comply with Fed.R.Civ.P. 23.1 when bringing a derivative claim on behalf of the trust).

{13} We need not consider whether Rule 1–023.1 and other shareholder derivative procedures apply in the present case because the Children received all the procedural safeguards required by the rule, including notice and the opportunity to object. *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir.1984) (discussing due process requirements of the notice provision in Rule 23.1); *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir.1983) (same); *see also* 5 James Wm. Moore, *Moore's Federal Practice* § 23.1.10[1][b] (3d ed.2003) (stating that notice must "provide sufficient information to allow the shareholders to make an informed choice regarding whether to intervene to challenge the proposed disposition of the liti-

gation"). The Children were served with notice of the trial court's hearing on August 13, 2001. They were advised that the purposes of the hearing were to decide (1) whether to approve the mediated settlement and (2) the issue reserved in paragraph 3 of the trial court's June 12, 2001, order: i.e., "the extent to which [the three children], as beneficiaries of The Trust, shall be entitled, if at all, to the rights and benefits from any award against [the Bank] in this action." The June 12, 2001, order was attached to the notice. In addition, Perez Losey's counsel hand-delivered to the Children's counsel the text of the agreement. The Children acknowledge that they received sufficient notice; therefore, notice is not an issue.

{14} The Children do not assert on appeal that they lacked the opportunity to object, nor do we find any lack of opportunity. They submitted to the trial court a detailed response in opposition to the mediated settlement. At the settlement hearing, they presented to the court their views on the adequacy of the agreement and the allocation of the award, cross-examined Perez Losey, and otherwise offered evidence. The Children were permitted to call their own witnesses and chose not to do so. At the conclusion of the hearing, the trial court stated that it would consider all arguments and testimony. Following the hearing, the Children tendered their findings of fact and conclusions of law. The trial court ultimately approved the mediated settlement. The record demonstrates that the notice and opportunity to be heard given to the Children more than comported with due process and the purposes of Rule 1–023.1. *See Jones,* 741 F.2d at 325 ("Appellant was afforded the full panoply of procedural due process when he received adequate notice of the settlement hearing and had the significant opportunity to be heard by submitting an extensive memorandum to the court prior to the hearing detailing his objection to the settlement."). Thus, a determination by this Court that Rule 1–023.1 should have been applied in this case would make no difference, since the Children were given the benefits of a Rule 1–023.1 hearing, even though the trial court based its decision on Rule 1–024. *See In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.

1992) ("On appeal, error will not be corrected if it will not change the result.").

## 2. Rule 1–024

{15} By order entered June 12, 2001, the trial court ruled that Perez Losey's suit was derivative. But the trial court also made clear in that order that any decision regarding the distribution of proceeds would be made at the end of the trial and, further, that the Children might not be entitled to benefit from any award against the Bank. The Children were thus alerted to the possibility that any entitlement to proceeds might be jeopardized and that intervention in the trial might be necessary to protect their interests. The language of the order is in contrast to their argument that they assumed Perez Losey would protect their interests. The Children made no attempt to intervene during the course of the trial. After Perez Losey and the Bank reached the mediated settlement, the Children entered their objection. The trial court determined that the Children's objection was a motion to intervene, which was denied as untimely.

{16} The Children insist they did not try to intervene. They do not suggest that they should have been able to intervene or that the trial court's determination that they untimely attempted to intervene was prejudicial. Their contention on appeal is that intervention is unnecessary and that they have a right to object under Rule 1–023.1. Having concluded above that the Children were effectively accorded the rights to object under that rule, we find that any error the trial court might have made in interpreting the Children's objection as a motion to intervene would not have changed the result. *See In re Estate of Heeter,* 113 N.M. at 695, 831 P.2d at 994. Nevertheless, because the trial court applied Rule 1–024, we review the trial court's determination that the Children's motion to intervene failed because it was untimely.

{17} Rule 1–024 provides for intervention of right and permissive intervention. Rule 1–024(A), (B). Although the trial court applies different standards for the two kinds of intervention, granting more leeway when

the intervention is of right, *Apodaca v. Town of Tome Land Grant*, 86 N.M. 132, 133, 520 P.2d 552, 553, both kinds of intervention require a "timely application." Rule 1–024(A), (B). The timeliness requirement lacks "precisely measurable dimensions," and whether the requirement is met lies within the trial court's discretion. 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1916 at 422 (2d ed.1986). For both kinds of intervention, however, the trial court assesses the time element "in light of all the circumstances of the case." *Id.* at 426; *see also Richins v. Mayfield*, 85 N.M. 578, 580, 514 P.2d 854, 856 (1973) (stating that "[t]he timeliness of such an application depends upon the circumstances of each case" in the context of a claim to intervene as of right). A crucial factor for the trial court is whether the intervenor knew of its interest and could have sought to intervene earlier in the proceedings. Wright et al., *supra*, § 1916, at 428, 430; *Thriftway Mktg. Corp. v. State*, 111 N.M. 763, 765, 810 P.2d 349, 351 (Ct.App. 1990) (in analysis of litigant's claim for permissive intervention, holding that "[a] key consideration in determining timeliness is whether the effort to intervene occurred shortly after the would-be intervenor discovered such action was necessary to protect its interests"). The trial court must also consider whether permitting intervention will prejudice the existing parties-particularly with respect to additional delay. Wright et al., *supra*, § 1916, at 435. Where the litigation is of great complexity, permitting intervention may be more prejudicial to existing litigants. *See Apodaca*, 86 N.M. at 133, 520 P.2d at 553. We review the trial court's application of the timeliness requirement of Rule 1–024 for abuse of discretion. *Apodaca*, 86 N.M. at 133, 520 P.2d at 553 ("The determination of timeliness is a matter peculiarly within the discretion of the trial court.").

■ {18} Assuming, as the trial court did, that the Children's challenge to the settlement agreement constituted a motion to intervene, and further assuming that the Children were entitled to the leeway given to intervenors as of right, we find no abuse of discretion in the trial court's refusal to permit intervention. Without question, the Chil-

dren could have intervened earlier in the proceedings. The record shows that the Children were given ample opportunity to become parties prior to August 10, 2001. Before filing the suit, Perez Losey had a draft of the petition sent to the Children's attorney and thereafter made repeated efforts to find out if the Children were interested in participating in the suit. According to Perez Losey, they "never responded, never indicated any inclination to participate." A copy of the First Amended Petition and a notice of hearing on the petition were delivered to the Children. They were given timely notice of the trial scheduled to begin on June 11, 2001, and the Children's attorney was served with a subpoena to testify. The Children contend they had no idea, until they saw the mediated settlement, that "Perez Losey would attempt to deny [them] a share of the proceeds." The trial court's order of June 12, 2001, however, informed them that they might not receive any proceeds. The order specified that the trial court would decide, after trial, what, *if any*, rights and benefits from any award against the Bank the Children would be entitled to; a copy of the order was hand-delivered to the Children's attorney the same day. Yet, the Children chose not to intervene to protect their interests. After the mediated settlement was reached and the Children realized they would receive nothing, they promptly filed an objection. The trial court found this delay untimely. We cannot say that this was an illogical conclusion for the trial court to reach. *See Sims v. Sims*, 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153 (1996).

{19} Moreover, the complexity of the litigation suggests that permitting intervention would have prejudiced Perez Losey. *See Apodaca*, 86 N.M. at 133, 520 P.2d at 553. Here, the record reveals complex litigation with a considerable amount of pretrial discovery, numerous motions and hearings, and ten days of trial having occurred prior to the Children's August 10, 2001, objection to the settlement. During discovery alone, the Bank produced about 40,000 pages of documents, while Perez Losey produced another 5,000 pages; there were twenty-eight days of depositions with 4,213 pages of testimony and

another 4,125 pages of exhibits included in the depositions; numerous hearings took place on various motions from the parties; and a pretrial conference occurred with a full-day hearing on admission of exhibits and remaining motions. The trial record consisted of 1,675 pages of testimony and 189 admitted exhibits consisting of 1,050 pages. Expenses incurred were also considerable; the trial court found that Perez Losey had incurred more than $650,000 in attorneys fees and had spent in excess of $170,000 in out-of-pocket expenses. Meanwhile, the trial court found that the Children had made no offers to assist Perez Losey with past or future costs or fees, even considering that the Bank's consent defense would be an absolute defense if proven. In light of this record, we cannot say that the trial court abused its discretion under Rule 1–024 in denying the Children's motion. *See Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case.").

## B. Approval of the Mediated Settlement

{20} Perez Losey filed a motion for approval of the settlement and attached a copy of the executed mediated settlement. The pertinent terms are as follows:

1. [The Bank] agrees to pay [redacted settlement amount] plus interest as described below in full settlement of all claims made, or which could have been made, in the Lawsuit.

2. [Perez Losey] agrees to accept [redacted settlement amount] plus interest . . . in full settlement of all claims made, or which could have been made, in the Lawsuit. The [redacted settlement amount] plus interest, if any, shall sometimes be referred to as the "Settlement Amount."

3. This [mediated settlement] is subject to court approval by the Honorable Theresa Baca and exhaustion of all appeals, if any, related to that approval. . . . If court approval is not obtained, or if the court approval is re-versed on appeal, this Agreement is null and void, and trial will resume at such time as scheduled by the Court. . . . If the trial resumes, then it shall proceed before the Honorable Theresa Baca as if it had never recessed and each party's position is preserved in *status quo ante.*

. . . .

5. Upon payment, the parties shall dismiss with prejudice the Lawsuit, including all claims and counterclaims made and which could have been made. . . .

6. Upon payment, the parties will simultaneously deliver executed, mutually satisfactory releases of each other from any and all claims, including but not limited to any claims made, or which could have been made, in the Lawsuit directly, indirectly and/or derivatively, and no payment shall be due hereunder until delivery of such releases, notwithstanding any other provision herein.

{21} In approving the mediated settlement, the trial court concluded that the settlement amount "constitutes [Perez Losey's] claimed interest in the corpus of assets owned by Jerry B. Losey at the time of his death and passes to [her] . . . as of the date of his death on June 21, 1996," and that "[t]he Losey Children have no right to any benefit from the Mediated Settlement Agreement." The trial court further found that to grant the Children's "request to disapprove the [mediated settlement] and continue the trial would constitute acts of extreme unfairness and prejudice to [Perez Losey and the Bank]" and that the mediated settlement "is a fair and reasonable resolution of the issues in this case."

{22} We review approval of a mediated settlement in a derivative action for abuse of discretion. *Jones,* 741 F.2d at 324 ("The authority to approve a settlement of a . . . derivative action is committed to the sound discretion of the trial court."); *Maher,* 714 F.2d at 455 (stating that approval of settlement agreement is in sound discretion of trial court). An agreement must be fair,

adequate, and reasonable to be approved. *Jones,* 741 F.2d at 324. It must also be free from collusion or fraud. *Maher,* 714 F.2d at 457. In making its assessment,

the trial court should consider:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Jones,* F.2d 741 at 324; *see Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.2002); *Gottlieb v. Wiles,* 11 F.3d 1004, 1014 (10th Cir.1993). It is the burden of the agreement's proponents to show that a settlement is fair and reasonable. *Maher,* 714 F.2d at 454.

{23} We find nothing in the record to suggest anything but fair and honest negotiations throughout the process and are satisfied that the trial court gave proper scrutiny to the negotiation process, the first factor. The trial court considered each of the above factors before it approved the mediated settlement. The trial court encouraged the negotiations, which were successfully completed with the assistance of a mediator. At the hearing held August 13, 2001, Perez Losey presented testimony about the parties' selection of the mediator and mediation process. The record also reveals that prior to that final mediation, there was vigorous advocacy by Perez Losey and the Bank. The Children allege collusion between Perez Losey and the Bank but provide no evidence to support the allegation.

{24} The trial court also considered whether questions of law and fact placed the outcome of the trial in doubt and whether immediate recovery outweighed the potential for future relief. At the hearing held August 13, 2001, Perez Losey testified concerning the complexity of the case and the uncertainties of the trial outcome. Having conducted numerous hearings on dispositive motions and having heard ten days of trial testimony, the trial court itself had a long acquaintance with the details of the then two-year-old case. Similarly, the trial court considered the benefits of immediate recovery and the expense of litigation. Perez Losey's presentation of evidence included a list of the many admitted trial exhibits, as well as the numerous pages of trial testimony; a list of the dates of the myriad hearings pertaining to the litigation; a list of depositions with locations and dates; and the costs Perez Losey herself incurred from the two years of litigation. She spoke of the effects that trial preparation had on her life. The trial court also considered the absence of an offer by the Children "to share future attorneys fees, costs, risk, their time and the stress which comes from prosecuting a complex lawsuit against an adversary like [the Bank]. These future burdens include at least six days of trial, probable post-decree legal work, and an appeal." The trial court properly considered the second and third factors.

{25} We believe that the trial court gave due scrutiny to the fourth factor, including the allocation issue raised by the Children. The Children do not dispute that the settlement amount is fair and reasonable; rather, they argue that the allocation of the settlement is unfair. Specifically, they maintain that they are entitled to 75% of the award pursuant to the future claims agreement. The trial court found that it did not have jurisdiction to enforce the future claims agreement. Regarding the Bank's sale of Zuni Rental—the basis of the claims against the Bank—the trial court found that the Children were aware that the Bank could assert their consent to the sale as a complete defense. The trial court also found that the Children had the opportunity to defend themselves when they were served with the June 12, 2001, order, alerting them to the possibility of no recovery from any award against the Bank. We hold that the trial court was well within its discretion to conclude that the mediated settlement was fair and reasonable.

{26} On appeal, the Children contend that the award should have gone to the Trust, rather than to Perez Losey. Gen-

erally, a derivative claim is one brought on behalf of a legal entity, such as a corporation or partnership, "to assert a right belonging to [that entity] or to redress a wrong done to it." *Fate*, 2001–NMCA–040, ¶ 18, 130 N.M. 503, 27 P.3d 990. Recovery generally goes to the entity harmed, rather than to individuals. *Lynch v. Patterson*, 701 P.2d 1126, 1130 (Wyo.1985); 2 Principles of Corporate Governance: Analysis and Recommendations § 7.18 reporter's note 9, at 237 (American Law Institute 1992) ("Pro-rata recovery in a derivative action is an exception to the general rule that the recovery in such an action accrues to the corporation."). We find no reference to the Children's argument below or, for that matter, any suggestion by the Children to the trial court that the Trust, and not they themselves, should receive the award against the Bank. We decline to consider this argument for the first time on appeal. *See Harbison v. Johnston*, 2001–NMCA–051, ¶ 7, 130 N.M. 595, 28 P.3d 1136 (stating that an issue is preserved for appeal only if the appellant alerted the trial court to the error and if the opposing party had a fair opportunity to respond to the objection).

## C. The Children's Contracts with Perez Losey

{27} At the hearing held June 14, 2001, the Children sought to enforce the 1997 agreements. The trial court admitted the settlement agreement and release as an exhibit only; it denied admission of the future claims agreement. The trial court further determined that it was without jurisdiction to enforce either contract.

{28} The crux of the Children's argument is that (1) the agreements are contracts; (2) valid contracts between parties govern their rights and duties; (3) Losey had a contractual obligation to share any recovery with the three children; and (4) the trial court erred in refusing to admit the future claims agreement into evidence and in refusing to enforce it. Perez Losey counters that the Children should have raised enforcement of the 1997 agreements prior to trial, after the Children received notice in the trial court's June 12, 2001, order that they may not be entitled to a share of any settlement award; that the sub-

ject matter of the current lawsuit is breach of the Bank's fiduciary duty, not the enforcement of the 1997 agreements; and that any claims to enforcement of the 1997 agreements must, at this point, be brought directly against Perez Losey in a separate breach of contract action.

{29} We agree with the trial court's conclusion that enforcement of the 1997 agreements is the subject of another suit by the Children. The issues for trial in the case below were delimited by the final pretrial order; the order contained no reference to enforcement of the agreements. Generally, only those theories of liability contained in a pretrial order will be considered at trial. *Fahrbach v. Diamond Shamrock, Inc.*, 1996–NMSC–063, 122 N.M. 543, 550, 928 P.2d 269, 276. It was not an abuse of discretion for the trial court to refuse to consider the Children's enforcement claim at this stage of the proceeding. *See Gonzales*, 2002–NMCA–086, ¶ 12, 132 N.M. 558, 52 P.3d 418 (holding it was not an abuse of discretion for the trial court to refuse filing of a third-party complaint against plaintiff in her individual capacity because it raised a new theory of recovery days before commencement of trial, would have unduly complicated the litigation, and most likely would have required a continuance).

## D. Issue Regarding Bank's Fiduciary Duty Not Preserved

{30} The Bank and Perez Losey contend that the Children failed to preserve their argument that the Bank breached its fiduciary duty to the Children when it entered into the mediated settlement with Perez Losey. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked...." Rule 12–216(A) NMRA 2003; *see Harbison*, 2001–NMCA–051, ¶ 7, 130 N.M. 595, 28 P.3d 1136. The principal purpose of the rule is to alert the trial court to a claimed error and to give the trial court an opportunity to correct the error. *Madrid v. Roybal*, 112 N.M. 354, 356, 815 P.2d 650, 652 (Ct.App.1991). If a decision by the trial court was not properly invoked, this Court will not consider the matter on appeal. *See Cadle Co. v. Wallach*

526

*Concrete, Inc.,* 115 N.M. 556, 558, 855 P.2d 130, 132 (1993) (stating that theories, defenses, or other objections will not be considered when raised for the first time on appeal); *Sec. Ins. Co. v. Chapman,* 88 N.M. 292, 295–96, 540 P.2d 222, 225–26 (1975). Without referring us to specific page numbers, the Children inform us that they preserved the issue in their response in opposition to the mediated settlement and in the two-volume "Transcripts" of the hearing held August 13–14, 2001. They also point us to their objections to the proposed decree, as well as their requested findings and conclusions. While there are references to the Children's theory of breach of fiduciary duty by Perez Losey in the response and objections, we find no reference to the theory that the Bank breached its fiduciary duty to the Children by agreeing to the mediated settlement. Further, we will not search the trial transcripts for evidence of their having preserved the issue. *See In re Estate of Heeter,* 113 N.M. at 694, 831 P.2d at 993. We did search the numerous findings and conclusions cited by the Chil-

dren; aside from a few indications of the Bank's being a trustee with a fiduciary duty to the beneficiaries, none of these citations preserve the specific issue of whether the Bank violated its duty by reaching the mediated settlement. Nor is there any indication of a ruling on the issue from the trial court. We therefore do not address the issue.

## III. CONCLUSION

{31} For the reasons above, we affirm the trial court's approval of the mediated settlement.

{32} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and CYNTHIA A. FRY, Judge.