This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SANDRA SKINNER,**

Plaintiff/Counter-Defendant-Appellee,

v.                                    **No. A-1-CA-35817**

**JASON LOPEZ and LINDA LOPEZ,**

Defendants/Counter-Plaintiffs-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. DeLaney, District Judge**

Tyler W. Benting
Deming, NM

Diane P. Donaghy
Tijeras, NM

for Appellee

Sherman & Sherman
Frederick H. Sherman
Deming, NM

for Appellants

**MEMORANDUM OPINION**

**KIEHNE, Judge.**

{1}    Jason and Linda Lopez (Buyers) appeal from a judgment, order of forfeiture, and writ of replevin entered against them following a jury trial on claims arising from a sale of real property and farm equipment in Deming, New Mexico. Buyers' claims on appeal are not entirely clear, but we understand them to be that the district court erred by: (1) ruling that Buyers could not refer to emails exchanged between the parties as the "email contract"; (2) ruling that Buyers were not entitled to assert a defense that they signed the sales contracts under duress; (3) excluding any testimony about insurance payments at trial; (4) granting summary judgment to Sandra Skinner (Seller) on Buyers' counterclaim alleging that Seller sold equipment to them that did not belong to her, and excluding a witness who would have testified about that claim; (5) striking Ms. Lopez's counterclaims due to her failure to appear in court as ordered; and (6) committing various jury instruction errors. After consideration of Buyers' claims, we affirm the district court's judgment.

{2}    We hold that the majority of Buyers' claims are either unpreserved, undeveloped, or waived. Despite being granted an extension of time to file their brief in chief, after having failed to meet the initial deadline, Buyers' brief in chief falls well below the standard expected of litigants in this Court. *See* Rule 12-318 NMRA. Buyers' brief is confusing, lacks adequate citations to the record, and at times misrepresents the procedural history of the case.

**{3}** We also note that Buyers' statement describing how they preserved their claims is inadequate because it states only that Buyers preserved their claims by filing a post-trial motion for a new trial. *See* Rule 12-318(A)(4) NMRA (stating that appellate brief must contain "a statement explaining how the issue was preserved in the court below"). "Raising [a] matter in [a] motion for a new trial [is] too late; objections must be raised in time for the trial judge to correct the error to prevent prejudice." *Goodloe v. Bookout*, 1999-NMCA-061, ¶ 13, 127 N.M. 327, 980 P.2d 652, *superseded by rule on other grounds as stated in Acosta v. Shell W. Exploration & Prod., Inc.*, 2013-NMCA-009, ¶¶ 40-45, 293 P.3d 917. A party's failure to follow the Rules of Appellate Procedure makes it more difficult for this Court to review and decide cases efficiently. We admonish Buyers' counsel to comply with them in the future.

## I.     BACKGROUND

**{4}** Buyers purchased a farm and farm equipment from Seller. The parties negotiated the sale by email because Buyers lived in California and Seller lived in New Mexico. Mr. Lopez visited the farm in September 2010, before agreeing to purchase the farm and the equipment. After the parties agreed by email on the basic terms of the sale in December 2010, Seller stated by email that she would have her lawyer prepare written contracts for the sale. Buyers were anxious to move to the farm so that they would have time to plant an alfalfa crop in the spring of 2011, which they

were relying on to finance the sale. Seller would not allow Buyers to move onto the land until the contracts had been signed. The written contracts included a provision that Buyers were accepting the land and the equipment in "as is" condition, although the parties had not discussed that by email. Buyers signed a sales contract and security agreement for the equipment, and signed a real estate contract for the sale of the land.

{5}    At the time Buyers arrived, the houses included in the sale and the equipment were not in the condition that they expected, possibly due in part to a freeze that caused some issues in preparing the properties to be occupied, and the relationship between the parties deteriorated. Buyers removed some of the secured equipment from the property, believing it was trash or in order to have repairs made, without getting permission from Seller as required by the security agreement. Seller then sued Buyers in January 2012, seeking to terminate the sales contract for the equipment and for a writ of replevin, which would have allowed Seller to retake possession of the equipment. *See Black's Law Dictionary* 1491 (10th ed. 2014) (defining a "writ of replevin" as "[a] writ obtained from a court authorizing the retaking of personal property wrongfully taken or detained"). In a separate lawsuit, which was ultimately consolidated with the suit for replevin, Seller filed an ejectment claim against Buyers in October 2013 due to their failure to pay taxes in a timely manner as required by the

6

real estate contract. Seller also included a breach of contract claim because Buyers stopped making payments for the land in August 2013, but continued to occupy it.

{6} Buyers brought counterclaims for breach of the Unfair Practices Act; breach of the implied covenant of good faith and fair dealing; intentional or negligent misrepresentation and fraud; and bad faith, alleging that Seller pressured them into signing the contracts, and alleging that the land and houses they purchased were not in good condition, as Seller had represented to them. Buyers asserted affirmative defenses that they relied on Seller's misrepresentations about the condition of the equipment to their detriment; that they were defrauded by Seller's representations that she owned some of the farm equipment; and that Seller should be barred from asserting that the property and equipment were purchased "as is" when she made misrepresentations about the condition of the farm and equipment. Mr. Lopez remained on the property while the lawsuit proceeded.

{7} At trial, the district court dismissed Ms. Lopez's counterclaims as a sanction for her failure to comply with an order to appear in court on the first day of trial. The jury found for Seller on all of her claims and rejected all of Mr. Lopez's counterclaims. The district court ordered that Buyers pay Seller $7,500 for the wrongful disposition of the equipment, and $74,913 for unjust enrichment. The district court then issued a writ of replevin for the equipment and ordered that Buyers forfeit the land after

holding a hearing to determine whether forfeiture of the land shocked the court's conscience.

**{8}** We will set forth additional facts as necessary to address Buyers' claims on appeal.

## II.     DISCUSSION

### A.     Reference to email exchanges as "the email contract"

**{9}** Buyers argue that the district court abused its discretion by "order[ing] . . . Buyers and their attorney not to discuss the 'email contract' . . . without motion or request at the start of the jury trial, sua sponte." Our review of the record reveals that Seller raised this issue in an oral motion in limine. Buyers had the opportunity to respond to the motion before the district court ruled on the issue. Here, because Seller raised the issue and Buyers had the opportunity to respond, the district court did not act sua sponte. *See Black's Law Dictionary* 1650 (10th ed. 2014) (defining "sua sponte*"* as "[w]ithout prompting or suggestion; on [a court's] own motion").

**{10}** Buyers intended to argue to the jury that Seller made deceptive and fraudulent misrepresentations in the emails, that the emails formed the contract between the parties, and that the written contracts that they signed later were not valid because they were signed under duress and included terms that were not agreed to by the parties in

the email exchange. On appeal, Buyers argue that they were not permitted to admit the emails into evidence or argue that they formed an "email contract," and that this prevented them from creating a factual record and denied them due process of law. This misrepresents the district court's order, which provided that the parties could not refer to the emails as a "contract." Our review of the record shows that the district court still permitted the emails to be introduced into evidence and allowed Buyers to argue that Seller made misrepresentations in the emails, but simply prohibited Buyers from referring to the emails as a "contract," and ruled that Buyers could not testify that they believed the emails created a contract until the district court made a finding that there was ambiguity in the written contracts. Thus, Buyers' argument that they were not permitted to argue that the emails formed a contract is without merit.

{11}     Finally, Buyers argue that under Rule 11-105 NMRA, once the emails were stipulated to by the parties as admissible, the district court could not direct Buyers not to refer to the emails as an "email contract." Rule 11-105 states that "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Seller moved before trial that the emails not be referred to as a "contract." The district court agreed and instructed the parties not to refer to the emails as a contract, thus restricting the

evidence to its proper scope. To the extent that Rule 11-105 applies to this situation, Seller fulfilled the rule's requirements by timely requesting that the emails not be referred to as a contract. Buyers' argument is therefore without merit.

**B.     The district court properly declined to allow Buyers' claim that they signed the contracts under duress**

{12}     Buyers next argue that the district court erred by ruling sua sponte that they could not present an affirmative defense that they signed the contracts with Seller under duress, because they had not included it in their answer to the complaint. Buyers' duress defense appears to have been that they were under "pressure" to sign the contracts so that they could plant their alfalfa on time and thus make the money that they intended to use to make the payments on the real estate contract, and that Seller took advantage of their time constraints to force them to sign a contract that included an "as is" provision to which they had not agreed.

{13}     Again, Buyers are incorrect; the district court did not rule sua sponte. Buyers explicitly raised the duress defense in a proposed jury instruction. Seller filed a brief one day before trial objecting to this and other instructions, arguing that Buyers had not pleaded that defense in their answer to the complaint, and that they should not be allowed to amend their pleadings on the eve of trial. Buyers filed a motion for a continuance or to allow amendments to the pleadings "that have not been a surprise"

two days before trial. Buyers' motion did not say what counterclaims or affirmative defenses they wanted to assert.

{14}     The district court denied Buyers' motion at a hearing the day before trial began. The district court also ruled that Buyers would be limited at trial to litigating matters that they specifically asserted in their answer and counterclaim. The district court denied Buyers' leave to amend because the case had been pending for several years, Buyers knew about most of their potential claims before Seller's complaint was even filed, and trial was set to begin the next day. This set of events cannot be characterized as a sua sponte ruling.

{15}     We now address the substance of Buyers' claim that the district court improperly prevented them from presenting their duress defense to the jury. Buyers claim that they properly asserted a duress defense in their answer and counterclaim, although they did not use the word "duress," because they alleged that they wanted to plant alfalfa soon to generate the cash flow that they would need to make the payments to Seller, and that Seller was aware of Buyers' need for speed, and pressured them to sign a contract that included an "as is" provision that would absolve her from liability for the misrepresentations that she made about the property. In effect, Buyers are claiming that the district court erred by failing to recognize that they properly stated the affirmative defense of duress in their answer; we review this claim

de novo. *See Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (stating that a dismissal for failure to state a claim is reviewed de novo).

**{16}** Buyers may well have attempted to plead the defense of duress. But even if the district court erred by not recognizing this, Buyers' claim still fails because the facts that they alleged do not constitute duress. In New Mexico, to decide whether a contract was entered into under duress, the relevant question is "whether a person has been coerced into the transaction by the wrongful act of another." *Richards v. Allianz Life Ins. Co. of N. Am.*, 2003-NMCA-001, ¶ 30, 133 N.M. 229, 62 P.3d 320 (alteration, internal quotation marks, and citation omitted). The conduct claimed to cause duress must be wrongful, but not necessarily criminal. UJI 13-838 NMRA, comm. cmt. "Wrongful acts which will constitute duress extend to 'economic compulsion' or 'business duress,' in which a person is presented with such a severe business or financial loss as to present no reasonable alternative but to enter into a contract which he or she otherwise would not have." *Id*. Examples of wrongful acts include: "(1) physical threats to life or safety; (2) imprisonment; (3) destruction of goods or things of value; (4) institution of criminal proceedings; or (5) bad faith threat to breach a contract or fail to perform a duty." *Id*. To be entitled to a duress instruction, Buyers had to allege that Seller's intentional actions presented "such a

12

serious business or financial loss or injury to [Buyers] that [Buyers] ha[d] no reasonable choice or alternative" but to enter the contract. *Id.*

{17} Buyers, however, did not allege any wrongful act by Seller, or explain how it deprived them of a reasonable choice or alternative. Our understanding of Buyers' claim is that they were under "pressure" to sign the contracts so that they could immediately plant alfalfa, which they were depending on to generate the cash needed to make the payments for the farm and equipment, and that Seller took advantage of their time constraints to force them to sign a contract that included an "as is" provision to which the parties had not agreed. Though Buyers allege that Seller "pressured" them into signing a contract because Seller knew that they had to move quickly in order to plant on time, Buyers do not explain how Seller's requirement of having Buyers sign a written contract was wrongful, or how it deprived them of their choice about whether to complete the transaction. For a seller of real property, requiring the buyer to sign a written contract before allowing him or her to take possession of the property is prudent, not wrongful. Moreover, there was no threat of "serious business or financial loss or injury" to Buyers because, if they did not like the terms of the written contract that Seller presented to them, Buyers could have declined to sign it and thus not incurred any financial obligation to Seller. We affirm the district court's ruling on Buyers' duress claim.

**C. Buyers have not adequately briefed any issue about insurance payments**

{18} Buyers claim that the district court erred because "after the trial started, the court sua sponte refused to allow any testimony to go to the jury as to [i]nsurance payments." Buyers do not explain what the insurance payments were for, who made them, or how or why the district court excluded evidence of them. Buyers do not explain why they think the district court erred, or how its error prejudiced them. Buyers have therefore not adequately developed this argument for appellate review, and we decline to attempt to develop their arguments for them. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**D. Buyers have failed to adequately develop any challenge to the district court's grant of summary judgment regarding the ownership of equipment, or in excluding the testimony of Cynthia Sutton**

{19} In the facts section of their brief in chief, Buyers assert that two pieces of farm equipment that Seller sold to them did not actually belong to her, but instead belonged to a woman named Cynthia Sutton. Buyers then state that the district court sua sponte excluded evidence about ownership of the equipment as irrelevant, and struck Sutton as a witness, but provide no details about how the issue arose or why the district court ruled as it did.

14

{20} In the argument section of their brief, Buyers claim that "[d]uring voir dire, members of the jury panel indicated a problem with Seller selling Buyer equipment that didn't belong to Seller. On the second day of the [Seller]'s trial presentation, the [district court] struck . . . Sutton on the merits and without notice sua sponte reversing her prior decision." Buyers further claim that the district court erred by "directing [Seller] to file a Motion for Summary Judgment reversing its Order as to ownership of farm equipment owned by . . . Sutton but sold by [Seller] to [Buyers] where material facts were disputed." The only further explanation that Buyers offer in their brief is as follows:

> The court, in this case, denied [Seller]'s Motion in Limine as to [Seller] selling equipment that did not belong to her, warranted title knowing it belonged to . . . Sutton an[d] never gave her notice. The court stated, "because the [Seller]'s claims for breach of contract depend on whether a valid contract existed in the first place." This raises the issue that the court did not have the facts or law so denied [Seller]'s motion but oddly, flip flops without any evidence and strikes . . . Sutton sua sponte.

{21} Buyers plainly believe that the district court erred in some way in its treatment of their allegation that Seller sold equipment that did not belong to her, but unfortunately, their argument is largely incomprehensible. Buyers have failed to explain how the issue arose, what material facts were disputed, why it was improper for the district court to request briefing on the issue, or how the district court erred in excluding the evidence and striking Sutton as a witness. *See* Rule 12-318(A)(4)

15

(stating that appellate brief must contain "an argument which, with respect to each issue presented, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below"). Again, we will not review undeveloped arguments on appeal. *See Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**E.     Buyers failed to demonstrate how they were prejudiced by the district court's dismissal of Linda Lopez's counterclaims as a sanction for her failure to appear at trial**

{22}     Buyers next argue that the district court erred by striking Ms. Lopez's counterclaims due to her failure to appear in court on the first day of trial. We review a district court's order imposing sanctions for an abuse of discretion. *Newsome v. Farer*, 1985-NMSC-096, ¶¶ 6, 22, 103 N.M. 415, 708 P.2d 327; *Beverly v. Conquistadores, Inc.*, 1975-NMCA-070, ¶ 8, 88 N.M. 119, 537 P.2d 1015.

{23}     The district court first raised the issue of Ms. Lopez's attendance at a pre-trial conference four days before trial was scheduled to begin, and asked Buyers' counsel to confirm that Ms. Lopez intended to appear at trial, because she was not at the hearing and had not appeared in court since the case was assigned to the judge presiding over it. Buyers' counsel notified the district court that Ms. Lopez had obtained a new job in California and that they were waiving her appearance at trial.

16

The district court informed Buyers' counsel that a party is required to appear at trial unless otherwise excused by the court, and the court observed that it had not excused Ms. Lopez's appearance, had not seen a motion seeking to have her excused, and warned Buyers' counsel that Ms. Lopez might be found in default on Seller's claims or that her counterclaims might be dismissed if she did not appear for trial. The district court directed Buyers to file a motion explaining why Ms. Lopez should be excused. Buyers filed the motion seeking to excuse Ms. Lopez or to allow her to appear telephonically, explaining that she and Mr. Lopez had separated, that she had moved back to California, and that she believed she would be fired from her new job if she were out of the office to attend the trial. Seller opposed the motion, expressing concern about whether her interests were aligned with Mr. Lopez's interests, since the couple had separated. The court heard argument on the day before trial, and reiterated its concerns that Ms. Lopez had not appeared in court since the case was assigned to the district court judge, the district court did not know if her interests were truly aligned with Mr. Lopez's, and the court did not know if Ms. Lopez was aware that she could be found in default on Seller's claims and have her counterclaims dismissed if she did not appear for trial. Seller then responded to the Buyers' argument at the hearing, stating that it shared the same concerns that the district court had about Ms. Lopez's absence, and observed that if she were called to testify, Ms. Lopez's physical

presence was important because her nonverbal mannerisms would be relevant to the jury's ability to evaluate her credibility as a witness. The district court denied the motion, and ordered that Ms. Lopez appear at trial the next morning.

{24} On the first day of trial, Buyers' counsel informed the district court that Ms. Lopez would not be arriving from California until 5:00 p.m. that day but would be there the next day. Accordingly, the district court dismissed her counterclaims with prejudice due to her failure to comply with the court order to appear on the first day of trial. Ms. Lopez appeared on the second day of trial, and was excused by the court on the third day of trial so long as she continued to make herself available by telephone in case Seller decided to call her as a rebuttal witness.

{25} The jury found for Seller on all of Mr. Lopez's counterclaims, which were identical to Ms. Lopez's counterclaims, so Ms. Lopez would also have lost if her counterclaims had been presented to the jury. *See G.E.W. Mech. Contractors, Inc. v. Johnston Co.*, 1993-NMCA-081, ¶ 16, 115 N.M. 727, 858 P.2d 103 (holding that although the district court improperly dismissed action, the issue was moot and thus there was no prejudice). Buyers therefore have  not demonstrated how they were prejudiced by the district court's dismissal of Ms. Lopez's counterclaims and thus we need not consider the merits of this claim. *See Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 ("An error is harmless unless the

complaining party can show that it created prejudice."). We conclude that the district court did not abuse its discretion in dismissing Ms. Lopez's counterclaims. Accordingly, we affirm the district court's order doing so.

**F.     Buyers' objections to the jury instructions lack merit**

{26}     Buyers raise numerous objections to the district court's jury instructions. Most of them are incomprehensible, but we will address those claims whose meaning we can discern.

**1.     Buyers waived their objection to the verdict form by stipulating to it**

{27}     Buyers argue that the jury verdict form was improper because it did not comply with the examples provided in UJI 13-302(F) NMRA, and because it "effectively requires the jury to find for Seller." "[W]e review jury instructions de novo to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Atler v. Murphy Enter., Inc.*, 2005-NMCA-006, ¶ 6, 136 N.M. 701, 104 P.3d 1092 (internal quotation marks and citations omitted).

{28}     To preserve an objection to an erroneous jury instruction for appeal, a party must object to the given instruction, and explain what is wrong with it. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 13, 125 N.M. 748, 965 P.2d 332 (stating that a specific objection must be made to an instruction to preserve an issue for appellate review). The verdict form required the jury to circle "yes" or "no" in

response to questions that began with the phrase "We find for [Seller] . . . " For example, the first one said, "We find for [Seller] on her claim of default under the real estate contract[,]" and the jury was then asked to circle "yes" or "no." While this phrasing might be questionable, Seller points out that Buyers stipulated to the verdict form. While the discussion that Seller cites is not entirely clear, Buyers did not file a reply brief, and thus they have not disputed Seller's characterization of that discussion. Less than an hour later, shortly before the jury was brought in to hear the court's instructions and the parties' closing arguments, Buyers' counsel informed the district court that the verdict form did not contain a place for the jury to award punitive damages to Buyers if it were so inclined, and the district court said it would fix that mistake. If Buyers had any other objection to the verdict form, they could have made it at that time, but they did not. Buyers therefore have not preserved this argument. *See id.* ¶¶ 36-40 (holding that claimed verdict form error was not preserved where the parties had stipulated to the verdict form and no discussion occurred on the record about the language at issue). We decline to address Buyers' unpreserved claim of verdict form error.

**2.      The district court did not omit an instruction telling the jurors that they are the sole judges of the facts**

{29}      Buyers next argue that the district court erred by omitting the statement that jurors are the "sole judges of all disputed questions of fact" from UJI 13-2005 NMRA.

20

We note that essentially the same language was given in a different instruction, and this claim is therefore frivolous. *See Diversey Corp.*, 1998-NMCA-112, ¶ 16 (stating that jury instructions are to be read as a whole and when they fairly present the issues and the applicable law in light of the evidence presented at trial, they are sufficient). We reject Buyers' omitted-instruction argument.

**3.    Buyers' challenges to the district court's "theory of the case" jury instructions are waived and meritless**

{30}    Buyers next appear to claim that the district court erred by failing to give instructions under UJI 13-302(B-E), or that the court's instructions were defective, or that their proposed version of these instructions should have been given, and that consequently the jury was not adequately instructed on Mr. Lopez's counterclaims, or the burden of proof of the parties. But the district court indeed instructed the jury on the burdens of proof and affirmative defenses of the parties. Buyers have not explained why they think those instructions were improper, or why theirs were more appropriate, and thus Buyers have not properly developed this argument for appellate review. *See Sonntag v. Shaw*, 2001-NMSC-015, ¶ 17, 130 N.M. 238, 22 P.3d 1188 (noting that if the district court chooses to give one instruction over another, the party must draw that court's attention to the specific flaw in the given instruction to preserve the matter for review); *Diversey Corp.*, 1998-NMCA-112, ¶ 16 (noting that jury instructions are to be read as a whole and when they fairly present the issues and

21

the applicable law in light of the evidence presented at trial, they are sufficient); *see also Headley*, 2005-NMCA-045, ¶ 15 (noting that we do not review undeveloped argument on appeal).

**4.      Buyers' claim that the district court gave them no opportunity to submit an amended 13-302 instruction is waived as undeveloped**

{31}    Buyers also argue that the district court did not give them an opportunity to submit an amended 13-302 instruction, but they do not offer any citation to the record to show that the district court refused to allow them to submit a modified instruction. We decline to review the entirety of a multiple-hour jury instruction conference, hoping to find confirmation of Buyers' assertion that the district court refused to allow them to submit a modified instruction. *See In re Norwest Bank of N.M., N.A.*, 2003-NMCA-128, ¶ 30, 134 N.M. 516, 80 P.3d 98 (stating that this Court will not search the record for evidence of preservation).

**5.      Buyers' other assorted objections to the jury instructions are waived as undeveloped**

{32}    Finally, Buyers state generally that they objected to "[a]ll non-UJIs," and that some of the instructions they proposed should have been given, but were not. Buyers, however, have not identified the non-UJIs that they think the district court improperly gave. While Buyers do appear to identify some of their proposed jury instructions that they contend the district court should have given, they do not explain why the district

court erred by failing to give them, nor how the failure to do so prejudiced them. Again, we decline to review undeveloped arguments. *See Headley*, 2005-NMCA-045, ¶ 15.

## III.   CONCLUSION

{33}   Due to Buyers' failure to adequately brief or preserve their claims on appeal, we are unable to review most of Buyers' arguments and hold that the rest lack merit. Accordingly, we affirm the district court's judgment.

{34}   **IT IS SO ORDERED.**


_____

**EMIL J. KIEHNE, Judge**


**WE CONCUR:**


_____

**M. MONICA ZAMORA, Judge**


_____

**JULIE J. VARGAS, Judge**